LEXINGTON LAW GROUP
Mark N. Todzo, State Bar No. 168389
Meredyth Merrow, State Bar No. 328337
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com
mmerrow@lexlawgroup.com

Attorneys for Plaintiff
JOSEPH DIGIACINTO

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISO DIVISION

| | |
|---|---|
| JOSEPH DIGIACINTO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTSONS COMPANIES, INC., SAFEWAY, INC. and LUCERNE FOODS, INC.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Plaintiff Joseph DiGiacinto ("Plaintiff"), on behalf of himself and those similarly

2    situated, based on information, belief and investigation of his counsel, except for information

3    based on personal knowledge, hereby alleges:

4                                    **INTRODUCTION**

5        1.    Defendants Albertsons Companies, Inc., Safeway, Inc., and Lucerne Foods, Inc.

6    ("Defendants") advertise, market and sell disposable plates and bowls as compostable (the

7    "Products").  A compostable product is one that will entirely break down into usable compost.

8    The Products, however, contain significant amounts of perfluoroalkyl and polyfluoroalkyl

9    substances ("PFAS"), which do not break down and never become part of usable compost.

10        2.    PFAS are known as forever chemicals because they do not break down over time.

11    When PFAS are introduced into the environment, they seep into and contaminate both land and

12    water and then never leave.  PFAS introduced into soil contaminates crops grown in the soil and

13    meat farmed from animals that graze there.  Compost is used as soil-conditioning material or

14    fertilizer, so when compost is contaminated with PFAS, the PFAS then contaminates the soil

15    treated or fertilized with that compost and whatever grows or grazes on that soil.

16        3.    Many consumers concerned with the environmental problems associated with the

17    proliferation of trash and waste actively seek to purchase products that are compostable so such

18    products can be introduced into the soil rather than landfills.  These consumers are willing to pay

19    more for such products, which often cost significantly more than non-compostable alternative

20    products.  Indeed, the Products cost significantly more than non-compostable disposable plates

21    and bowls.

22        4.    This Complaint seeks to remedy Defendants' unlawful, unfair and deceptive

23    business practices with respect to the advertising, marketing and sales of the Products as

24    compostable, when, in fact, they are not.

25        5.    Plaintiff purchased the Products in reliance on Defendants' false representations

26    that the Products are compostable.  Plaintiff viewed Defendants' false representations on the

27    labels of the Products.  If Plaintiff had known that the Products were not compostable, Plaintiff

28    would not have purchased the Products and/or would not have paid the premium price for

compostable plates.  Defendants have thus breached its express warranty under the California

Commercial Code § 2313; violated the California Consumers Legal Remedies Act ("CLRA") by

making representations that the Products have characteristics, benefits and qualities which they do

not have and by advertising the Products without the intent to sell them as advertised; and

violated the Business and Profession Code § 17200 based on fraudulent, unlawful and unfair acts

and practices.

6.      Plaintiff and the Class seek an order enjoining Defendants' acts of unfair

competition and other unlawful conduct, an award of damages to compensate them for

Defendant's acts of unfair competition, false and misleading advertising, and breaches of

warranty, and restitution to the individual victims of Defendants' fraudulent, unlawful and unfair

acts and practices.

## PARTIES

7.      Plaintiff Joseph DiGiacinto is a resident of Cotati, California.  When given the

choice, Plaintiff buys products that are compostable, recyclable or reusable so that he can

minimize his impact on the environment.  Plaintiff purchased the Products approximately ten (10)

times during 2019 and 2020 from Safeway stores in Rohnert Park, California and Petaluma,

California.  Plaintiff purchased the Products for large family gatherings as an environmentally

friendly alternative to traditional single-use foodware.  Plaintiff specifically selected the Products

in reliance on Defendants' representations that the Products are compostable.  The false

representations are located on the labels and other marketing materials for the Products.  Had

Plaintiff known that the Products contained PFAs chemicals, and thus could not break down in an

industrial composting facility, he would not have purchased the Products.  Instead, he paid

considerably more for the Products than he would have for similar products that are not

advertised as compostable.

8.      Defendant Albertsons Companies, Inc. is a Delaware corporation with its principal

place of business in Boise, Idaho.  Defendant Albertsons Companies, Inc. manufactures,

distributes and sells the Products in California.

DOCUMENT PREPARED
ON RECYCLED PAPER

9.      Defendant Safeway, Inc. is a Delaware corporation with its principal place of business in Pleasanton, California.  Defendant Safeway, Inc. manufactures, distributes and sells the Products in California.

10.     Defendant Lucerne Foods, Inc. is a Delaware corporation with its principal place of business in Pleasanton, California.  Defendant Lucerne Foods, Inc. manufactures, distributes and sells the Products in California.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over Defendants because Defendants are corporations or other entities that have sufficient minimum contacts in California, are citizens of California, or otherwise intentionally avail themselves of the California market either through the distribution, sale or marketing of the Products in the State of California or by having facilities located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

12.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

13.     **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3.5(b))**:  This action arises in Sonoma County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Sonoma County.  Pursuant to L.R. 3-2(c), all civil actions which arise in xxx County shall be assigned to the San Francisco Division or the Oakland Division.

## BACKGROUND FACTS

14.     Due to the overwhelming amount of landfilled waste accumulating in the environment, biodegradable and compostable foodware options have become increasingly popular.  As people look to invest in sustainable alternatives to single-use plastics and packaging, consumers, including the Plaintiff, actively seek out products that are compostable, recyclable, or reusable, to prevent the increase in global waste and to minimize their environmental footprints.

15.     The California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied."  Pursuant to that section, the term "environmental marketing claim"

DOCUMENT PREPARED ON RECYCLED PAPER

includes any claim contained in the Guides for use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides").  *Ibid*; *see also* 16 C.F.R. § 260.1, *et seq*.  Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is compostable."  16 C.F.R. § 260.7(a).  "A marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost…in a safe and timely manner…in an appropriate composting facility…" 16 C.F.R. § 260.7(b).

16.     The Green Guides' definition of "compostable" is consistent with reasonable consumer expectations.  For instance, the dictionary defines the verb "compost" as:  to convert (a material such as plant debris) to compost.  The dictionary defines the noun "compost" as a mixture that consists largely of decayed organic matter and is used for fertilizing and conditioning the land."  Merriam-Webster Dictionary (2020).[1]  Accordingly, reasonable consumers expect that products advertised, marketed, sold, labeled, and/or represented as compostable will be converted into usable organic matter that decomposes into fertilizer to condition the land, and that such products will not introduce toxic chemicals into the fertilizer or land.

17.     The Green Guides specifically prohibit marketers from labeling products compostable if those products release toxins into the compost as they break down, noting that "a claim is deceptive if the presence of…toxins prevents the compost from being usable."  16 C.F.R. § 260.7(d), Example 2.

18.     Defendants advertise, market and sell their Products as compostable, yet the Products contain PFAS, highly persistent synthetic fluorinated chemicals which have been associated with cancer, developmental toxicity, immunotoxicity and other health effects.[2]

---

[1] Merriam-Webster Dictionary (2020); accessible at: https://www.merriam-webster.com/dictionary/compost; last accessed on: May 16, 2020.

[2] Schaider, L., et al., "Fluorinated Compounds in U.S. Fast Food Packaging" Environ Sci Technol Lett. 2017 ; 4(3): 105–111. doi:10.1021/acs.estlett.6b00435, (August 22, 2018), accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6104644/pdf/nihms983267.pdf, last accessed on May 13, 2020.

19.     PFAS' characteristic carbon-fluorine bonds make them extremely resistant to degradation, even at high temperatures.  And, the most commonly used PFAS have been detected globally in water, soil, sediment, wildlife, and human blood samples.[3]  The strength of the bond between carbon and fluorine means that these chemicals do not degrade in the environment.  In fact, according to the National Institute of Environmental Health Sciences, scientists are unable to estimate an environmental half-life for PFAS.[4]  Due to the highly persistent nature of these chemicals they break down very slowly, if at all, in the environment and in human bodies.[5]

20.     Because PFAS do not break down, they accumulate in air, soil, water and in the human body.  One report by the Centers for Disease Control and Prevention National Health and Nutrition Examination Survey found PFAS in the blood of 97 percent of Americans.[6]

21.     PFAS were created to be resistant to grease, oil, water, and heat, for use in non-stick cookware.[7]  Due to the grease and water-resistant properties of fluorinated compounds, PFAS are often added to paper plates, bowls, food storage and packaging products (together, "foodware").  This leads to increased PFAS exposure in humans and in the environment.  For products sold as compostable containing PFAS, there is the added concern that PFAS will seep into the ground and soil, contaminating otherwise-usable compost streams.  According to experts, fluorinated food contact materials are a source of PFAS in the environment, and because of their

---

[3] *Id*. at p. 2.

[4] National Institute of Environmental Health Sciences, accessible at: https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm, last accessed on May 5, 2020.

[5] U.S. Environmental Protection Agency, "PFOA, PFOS and Other PFASs", accessible at: https://www.epa.gov/pfas/basic-information-pfas, last accessed on May 5, 20202.  See also Center for Environmental Health, "Avoiding Hidden Hazards" January 2018 (revised April 2018), at p. 3.

[6] *Id*.

[7] U.S. Food & Drug Administration "Per and Polyfluoroalkyl Substances (PFAS)", accessible at: https://www.fda.gov/food/chemicals/and-polyfluoroalkyl-substances-pfas, last accessed on May 5, 2020.

DOCUMENT PREPARED
ON RECYCLED PAPER

CLASS ACTION COMPLAINT

environmental persistence "PFASs should be considered incompatible with compostable food packaging."[8]

22.     A recent study of sixteen replacement fluorinated compounds used in foodware, conducted by the Center for Environmental Health, showed that some PFAS can act like the hormone estrogen, while others cause liver damage in animal studies.[9]  These fluorinated compounds can move from foodware into water and other liquids.[10]  Foodware containing PFAS can also contaminate food items.  Worse yet, for contaminated foodware products that are compostable, PFAS can leach from the product into the compost stream, contaminating the compost itself and organic matter grown using that composted material.

23.     There is evidence that exposure to PFAS can lead to a number of adverse health effects, including, but not limited to reproductive and developmental, liver and kidney and immunological effects in laboratory animals.[11]  The most consistent findings from human epidemiology studies are related to infant birth weights, effects on the immune system, cancer and thyroid hormone disruption.[12]

24.     Over the past two decades, PFAS have come under increasing scrutiny from toxicologists, ecologists and regulators given their persistence and connection to serious potential health effects.[13]

25.     Humans are exposed to PFAS by consuming PFAS-contaminated water and food as well as through the use of products that contain PFAS.

---

[8] Schaider, L., et al., "Fluorinated Compounds in U.S. Fast Food Packaging" Environ Sci Technol Lett. 2017 ; 4(3): 105–111. doi:10.1021/acs.estlett.6b00435, (August 22, 2018), accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6104644/pdf/nihms983267.pdf, last accessed on May 13, 2020 at p. 8.

[9] Center for Environmental Health, "Avoiding Hidden Hazards" January 2018 (revised April 2018) at p. 7.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at p. 3.

Document Prepared on Recycled Paper

26.     Compostable and biodegradable foodware options have become increasingly popular with consumers as a means to eliminate waste and divert usable products from landfills.[14] For products that claim to be compostable and/or biodegradable, private certification schemes have arisen in the last two decades.

27.     Defendants' Products bear a certification by the Biodegradable Products Institute (BPI).  However, as of the date of filing, they are not certified.  Nevertheless, Defendants continue to sell the Products as BPI certified.

See the Product label below:



28.     California has not adopted any certification standard for compostable foodware. The Products, however, bear a compostability certification from a private organization, BPI.  BPI

---

[14] Biodegradable Products Institute, The History of "Biodegradation", accessible at: https://bpiworld.org/page-343343, last accessed on May 5, 2020.

1    is a small organization that performs no testing on products seeking certification.  Instead, it relies

2    on testing performed at third-party laboratories.  Certification with BPI costs approximately

3    $4,500, not including laboratory testing.[15]  BPI certification lasts three years.

4         29.    BPI failed to address the incompatibility of PFAS and compostability until 2017

5    when it hired a technical advisor to assist in its understanding of the impact of fluorinated

6    chemicals in compostable products.[16]  BPI's Board voted to adopt a standard of 100 ppm total

7    fluorine in 2019 and to add a statement of "no intentionally added fluorinated chemicals" to

8    compostable products which would take effect on January 1, 2020.[17]  However, BPI did not

9    perform or require any fluorine testing for previously certified products or products until 2020.

10   To the extent any fluorine testing was required in 2019, BPI relied on testing provided by the

11   companies seeking certification as none of its approved labs perform fluorine testing.

12        30.    The claims made by Defendants that the Products are compostable are uniform,

13   consistent, and material.  Because the claims are false and misleading, ordinary consumers,

14   including members of the Class, are likely to be deceived by such representations.

15        31.    By encouraging consumers to place the Products in their compost collection bins,

16   Defendants are contaminating entire compost streams with toxic materials that will not break

17   down over time—contaminating otherwise-usable and sustainable compost streams.  These

18   Products are then mixed with other composted materials in an industrial composting facility and

19   turned into soil fertilizer for crops and other foods.  However, the PFAS will remain, thus

20   contaminating the crops grown in that soil.  Environmentally motivated consumers who purchase

21   the Products in the belief that they are compostable are thus unwittingly hindering sustainable

22   composting efforts.

23

24   [15] "Purchasing Recommendations for Sustainable Food Service Ware," Sustainable Purchasing
     Leadership Council, Center for Environmental Health (February 6, 2020), accessible at:
25   http://www.ceh.org/wp-
     content/uploads/2020/03/2020_Purchasing_Recommendations_Sustainable_FSW.pdf, last
26   accessed: May 13, 2020, at p. 13.

27   [16] Biodegradable Products Institute, "Fluorinated Chemicals", accessible at:
     https://bpiworld.org/Fluorinated-Chemicals, last accessed on May 11, 2020.

28   [17] Id.

32.     Most consumers believe that if their Products are accepted into an industrial composting program, then those Products are compostable.  Defendants' representations that the Products are compostable are therefore likely to deceive ordinary consumers.

33.     The Green Guides are clear: "[a] marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost (e.g., soil-conditioning material, mulch) in a safe and timely manner (i.e., in approximately the same time as the materials with which it is composted) in an appropriate composting facility, or in a home compost pile or device."  16 C.F.R. § 260.7(b).   Here, the Products are not compostable because they are made with PFAS, which cannot break down over time.  Defendants' marketing of the Products as compostable is thus a direct violation of the Green Guides.  Because the Products are not compostable, Defendants' representations are thus per se deceptive under the Green Guides and under California law.

34.     Because the Products are not compostable, Defendant cannot make any compostable claims as to the Products.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of himself and the following Class of similarly situated individuals:

> All persons who purchased the Products for personal, family or household purposes in California (either directly or through an agent) during the applicable statute of limitations period (the "Class").  Specifically excluded from the Class are Defendants; the officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants.  Also excluded are any judicial officer presiding over this action and the members of

DOCUMENT PREPARED
ON RECYCLED PAPER

1    his/her immediate family and judicial staff, and any juror assigned

2    to this action.

3    36.    Plaintiff is unable to state the precise number of potential members of the proposed

4  Class because that information is in the possession of Defendants.  However, the number of Class

5  members is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1).  The

6  exact size of the proposed Class and the identity of its members will be readily ascertainable from

7  the business records of Defendants and Defendants' retailers as well as Class members' own

8  records and evidence.  The disposition of the claims of the members of the Class in this class

9  action will substantially benefit both the parties and the Court.

10    37.    There is a community of interest among the members of the proposed Class in that

11  there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2),

12  including whether Defendants' labels, advertisements and packaging include uniform

13  misrepresentations that misled Plaintiff and the other members of the Class to believe the

14  Products are compostable when they are not.  Proof of a common set of facts will establish the

15  liability of Defendants and the right of each member of the Class to relief.

16    38.    Plaintiff asserts claims that are typical of the claims of the entire Class for

17  purposes of Rule 23(a)(3).  Plaintiff and all members of the Class have been subjected to the same

18  wrongful conduct because they have purchased the Products that are labeled and sold as plates

19  and bowls that are compostable, when they are not in fact compostable.

20    39.    Plaintiff will fairly and adequately represent and protect the interests of the other

21  members of the Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to

22  those of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this

23  action and has retained counsel experienced in complex litigation of this nature to represent him.

24  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

25    40.    Class certification is appropriate under Rule 23(b)(2) because Defendants have

26  acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding

27  declaratory relief, is appropriate respecting the Class as a whole.  Defendants utilize advertising

28

1  campaigns that include uniform misrepresentations that misled Plaintiff and the other members of

2  the Class.

3      41.    Class certification is appropriate under Rule 23(b)(3) because common questions

4  of law and fact substantially predominate over any questions that may affect only individual

5  members of the Class.  These common legal and factual questions, which do not vary among

6  Class members and which may be determined without reference to the individual circumstances

7  of any Class member include, but are not limited to the following:

8          a.  whether Defendants advertise and market the Products by representing that the

9             Products are compostable;

10         b.  whether the Products contain PFAS;

11         c.  whether the Products are compostable as advertised and labeled by

12            Defendants;

13         d.  whether Defendants' marketing, advertising and labeling claims regarding the

14            compostability of the Products are likely to deceive a reasonable consumer;

15         e.  whether Defendants' representations regarding the compostability of the

16            Products are likely to be read and understood by a reasonable consumer;

17         f.  whether Defendants' representations regarding the compostability of the

18            Products are in compliance with the Green Guides;

19         g.  whether Defendants' claims regarding the compostability of the Products

20            would be material to a reasonable consumer of the Products;

21         h.  whether Defendants' conduct in advertising, marketing and labeling of the

22            Products constitutes a violation of California consumer protection laws;

23         i.  whether Defendants' representations concerning the Products constitute

24            express warranties with regard to the Products;

25         j.  whether Defendants breached the express warranties they made with regard to

26            the Products;

27         k.  whether Defendants' representations regarding compostability constitute

28            representations that the Products have characteristics, benefits or qualities

1    which they do not have;

2    l.   whether Defendants advertised their Products without an intent to sell them as

3         advertised;

4    m.   whether Defendants have been unjustly enriched from the sale of the Products;

5    n.   whether punitive damages are warranted for Defendants' conduct and, if so, an

6         appropriate amount of such damages; and

7    o.   whether Plaintiff and the Class members are entitled to injunctive, equitable

8         and monetary relief.

9         42.   Defendants utilize marketing, advertisements and labeling that include uniform

10   misrepresentations that misled Plaintiff and the other members of the Class.  Defendants' claims

11   regarding the compostability of the Products are one of the most prominent features of

12   Defendants' marketing, advertising and labeling of the Products.  Nonetheless, the Products are

13   not in fact compostable.  Thus, there is a well-defined community of interest in the questions of

14   law and fact involved in this action and affecting the parties.

15        43.   Proceeding as a class action provides substantial benefits to both the parties and

16   the Court because this is the most efficient method for the fair and efficient adjudication of the

17   controversy.  Class members have suffered and will suffer irreparable harm and damages as a

18   result of Defendants' wrongful conduct.  Because of the nature of the individual Class members'

19   claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for

20   the wrongs complained of herein, and a representative class action is therefore appropriate, the

21   superior method of proceeding, and essential to the interests of justice insofar as the resolution of

22   Class members' claims are concerned.  Absent a representative class action, members of the Class

23   would continue to suffer losses for which they would have no remedy, and Defendants would

24   unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by

25   individual members of the Class, the resulting multiplicity of lawsuits would cause undue

26   hardship, burden and expense for the Court and the litigants, as well as create a risk of

27   inconsistent rulings which might be dispositive of the interests of the other members of the Class

28

who are not parties to the adjudications or may substantially impede their ability to protect their interests.

## FIRST CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself, the Class and the General Public,
Alleges Violations of California Business & Professions Code § 17200, *et seq*.
Based on Commission of Unlawful Acts)**

44.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 45 of this Complaint.

45.     The violation of any law constitutes an unlawful business practice under Business & Professions Code § 17200.

46.     Defendants' conduct violates California Business & Professions Code § 7580.5, which makes it unlawful for any person to make any untruthful, deceptive or misleading environmental marketing claim.  Pursuant to § 17580.5, the term "environmental marketing claim" includes any claim contained in the Green Guides.  16 C.F.R. § 260.1, *et seq*.  Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is compostable.  A marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials int eh item will break down into, or otherwise become part of, usable compost (e.g., soil-conditioning material, mulch) in a safe and timely manner (i.e., in approximately the same time as the materials with which it is composted) in an appropriate composting facility, or in a home compost pile or device.  A marketer should clearly and prominently qualify compostable claims to the extent necessary to avoid deception if: (1) the item cannot be composted safely or in a timely manner in a home compost pile or device; or (2) the claim misleads reasonable consumers about the environmental benefit provided when the item is disposed of in a landfill." 16 C.F.R. § 260.7(a)-(c).  By misrepresenting that the Products are compostable as described above, Defendants are violating Business & Professions Code § 17580.5.

47.     As detailed more fully in the paragraphs below, the acts and practices alleged herein were intended to or did result in the sale of the Products in violation of the CLRA,

DOCUMENT PREPARED
ON RECYCLED PAPER

California Civil Code §1750, *et seq*., and specifically California Civil Code § 1770(a)(5), § 1770(a)(7) and § 1770(a)(9).

48.    Defendants' conduct also violates Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or effecting commerce.  By misrepresenting that the Products are compostable, Defendants are violating Section 5 of the FTC Act.

49.    Defendants' conduct also violates California Business & Professions Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product.  By misrepresenting that the Products are compostable, Defendants are violating Business & Professions Code § 17500.

50.    Defendants' conduct is also a breach of warranty.  Defendants' representations that the Products are compostable constitute affirmations of fact made with regard to the Products, as well as descriptions of the Products, that are part of the basis of the bargain between Defendants and purchasers of the Products.  Because those representations are material, false and misleading, Defendants have breached their express warranties as to the Products and have violated California Commercial Code § 2313.

51.    By violating the CLRA, the FTC Act, Business & Professions Code §§ 17500 and 17580.5, and California Commercial Code § 2313, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.  Plaintiff would not have purchased the Products, or would not have paid as much for Products, but for Defendants' unlawful business practices.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

52.    An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter.

## SECOND CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself, the Class and the General Public,
Alleges Violations of California Business & Professions Code § 17200,
*et seq*. Based on Fraudulent Acts and Practices)**

53.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 54 of this Complaint.

54.     Under Business & Professions Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

55.     Defendants have engaged and continues to engage in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, representing that the Products are compostable.

56.     Plaintiff purchased the Products in reliance on Defendants' representations that the Products are compostable.  Defendants' claims that the Products are compostable are material, untrue and misleading.  These compostable claims are prominent on all of Defendants' marketing, advertising and labeling materials, even though Defendants are aware that the claims are false and misleading.  Also, because Defendants' compostable claims violate Business & Professions Code § 17580.5, such claims are deceptive *per se*.  Defendants' claims are thus likely to deceive both Plaintiff and a reasonable consumer.  Plaintiff would not have purchased the Products, or would not have paid as much for the Products, but for Defendants' false representations that the Products are compostable.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

57.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

58.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter.

## THIRD CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself, the Class and the General Public,
Alleges Violations of California Business & Professions Code § 17200, *et seq*.
Based on Unfair Acts and Practices)**

59.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 60 of this Complaint.

60.     Under California Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

61.     Defendants have engaged and continue to engage in conduct which is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.  This conduct includes, but is not limited to, advertising and marketing the Products as compostable when they are not.  By taking advantage of consumers concerned about the environmental impact of non-sustainable waste, Defendants' conduct, as described herein, far outweighs the utility, if any, of such conduct.

62.     Defendants have engaged and continue to engage in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits and quality of goods for sale.

63.     Defendants' conduct also violates the policy of the Green Guides.  The Green Guides mandate that "it is deceptive to misrepresent, directly or by implication, that a product or package is compostable." 16 C.F.R. § 260.7(a).  It further states that "[a] marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of usable compost…in a safe and timely manner." 16 C.F.R. § 260.7(b).  As explained above, the Products are not compostable and the PFAS contained within the Products do break down into useable compost over time.  Moreover, the PFAS contaminate the compost, thereby contaminating the soil treated with the compost.

64.     Defendants' conduct, including failing to disclose that the Products contain PFAS which cannot break down into usable compost, is substantially injurious to consumers.  Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have purchased the Products but for Defendants' representations that the Products are compostable.  Consumers are concerned about environmental issues in general and PFAS contamination in particular.  Defendants' representations are therefore material to such consumers.  Misleading causes injury to such consumers that is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendants' conduct.  Defendants gain an unfair advantage over their competitors, whose advertising must comply with the CLRA, the FTC Act, Cal. Business & Professions Code § 17580.5, and the Green Guides.  Since consumers reasonably rely on Defendants' representations of the Products and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.

65.     Although Defendants know that the Products are not compostable, Defendants failed to disclose that fact to Plaintiff and the Class.

66.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

67.     An action for injunctive relief and restitution is specifically authorized under California Business & Professions Code § 17203.

68.     Plaintiff would not have purchased the Products, or would not have paid as much for Products, but for Defendants' unfair business practices.  Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter.

1

## FOURTH CAUSE OF ACTION

2

**(Plaintiff, on Behalf of Himself and the Class, Alleges Violations of the
California Consumers Legal Remedies Act – Injunctive Relief and Damages)**

3

4

69.      Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 70 of

5

this Complaint.

6

70.      Plaintiff and the Class members purchased the Products for personal, family or

7

household purposes.

8

71.      The acts and practices of Defendants as described above were intended to deceive

9

Plaintiff and the Class members as described herein and have resulted and will result in damages

10

to Plaintiff and the Class members.  These actions violated and continue to violate the CLRA in at

11

least the following respects:

12

a.      In violation of Section 1770(a)(5) of the CLRA, Defendants' acts and

13

practices constitute representations that the Products have characteristics, uses or benefits

14

which they do not;

15

b.      In violation of Section 1770(a)(7) of the CLRA, Defendants' acts and

16

practices constitute representations that the Products are of a particular quality, which they

17

are not; and

18

c.      In violation of Section 1770(a)(9) of the CLRA, Defendants' acts and

19

practices constitute the advertisement of the Products without the intent to sell them as

20

advertised.

21

72.      By reason of the foregoing, Plaintiff and the Class members have suffered

22

damages.

23

73.      By committing the acts alleged above, Defendants violated the CLRA.

24

74.      In compliance with the provisions of California Civil Code § 1782, on April 16,

25

2020, Plaintiff provided written notice to Defendants of his intention to seek damages under

26

California Civil Code § 1750, *et seq.*, and requested that Defendants offer an appropriate

27

consideration or other remedy to all affected consumers.  As of the date of this complaint,

28

Defendants have not done so.  Accordingly, Plaintiff seeks damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a).

75.    Pursuant to California Civil Code § 1780(a)(2) Plaintiff and the Class members are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, providing actual and punitive damages and restitution to Plaintiff and the Class members, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter.

### FIFTH CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself and the Class, Alleges Breach of Express Warranty)**

76.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 77 of this Complaint.

77.    The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

78.    As detailed above, Defendants marketed and sold the Products as compostable. Defendants' representations that the Products are compostable constitute affirmations of fact made with regard to the Products as well as descriptions of the Products.

79.    Defendants' representations regarding the compostability of the Products are uniformly made in the Products' advertising, internet sites and other marketing materials, and on the Products' labeling and packaging materials, and are thus part of the basis of the bargain between Defendants and purchasers of the Products.

80.    California has codified and adopted the provisions of the Uniform Commercial Code governing express warranties (Cal. Com. Code § 2313).

81.    At the time that Defendants designed, manufactured, sold and distributed the Products, Defendants knew that the Products were not compostable.

82.     As set forth in the paragraphs above, the Products are not compostable and thus do not conform to Defendants' express representations to the contrary.  Defendants have thus breached their express warranties concerning the Products.

83.     On April 16, 2020, Plaintiff sent a pre-suit demand letter to Defendants notifying Defendants that the Products are not compostable.  Defendants therefore have actual and constructive knowledge that the Products are not compostable and were thus not sold as marketed and advertised.

84.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Class members have suffered damages.

Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter.

## SIXTH CAUSE OF ACTION

### (Plaintiff, on Behalf of Himself and the Class, Alleges Unjust Enrichment)

85.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 86 of this Complaint.

86.     Plaintiff and the Class members conferred benefits on Defendants by purchasing the Products.

87.     Defendants have knowledge of such benefits.

88.     Defendants voluntarily accepted and retained the benefits conferred.

89.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Products.

90.     Retention of that money under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented through their labeling, advertising and marketing materials that the Products are compostable when the Products are not in fact compostable.

91.     These misrepresentations and omissions caused injuries to Plaintiff and the Class members because they would not have purchased the Products, or would not have paid as much

DOCUMENT PREPARED ON RECYCLED PAPER

1   for the Products, had they known that the Products are not compostable, and instead, contaminate

2   the compost stream.

3       92.     Because Defendants' retention of the non-gratuitous benefits conferred to them by

4   Plaintiff and the Class members is unjust and inequitable, Defendants ought to pay restitution to

5   Plaintiff and the Class members for their unjust enrichment.

6       93.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and

7   the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

8       Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter.

9                            **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

11      A.      That the Court declare this a class action;

12      B.      That the Court preliminarily and permanently enjoin Defendants from conducting

13  their businesses through the unlawful, unfair or fraudulent business acts or practices, untrue and

14  misleading advertising, and other violations of law described in this Complaint;

15      C.      That the Court order Defendants to cease and refrain from marketing and

16  promotion of the Products that state or imply that the Products are compostable;

17      D.      That the Court order Defendants to implement whatever measures are necessary to

18  remedy the unlawful, unfair or fraudulent business acts or practices, untrue and misleading

19  advertising and other violations of law described in this Complaint;

20      E.      That the Court order Defendants to notify each and every Class member of the

21  pendency of the claims in this action in order to give such individuals an opportunity to obtain

22  restitution and damages from Defendants;

23      F.      That the Court order Defendants to pay restitution to restore all Class members all

24  funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or

25  fraudulent business act or practice, untrue or misleading advertising, plus pre- and post-judgment

26  interest thereon;

27      G.      That the Court order Defendants to disgorge all money wrongfully obtained and all

28  revenues and profits derived by Defendants as a result of their acts or practices as alleged in this

1    Complaint;

2         H.       That the Court award damages to Plaintiff and the Class to compensate them for

3    the conduct alleged in this Complaint;

4         I.       That the Court award punitive damages pursuant to California Civil Code

5    § 1780(a)(4);

6         J.       That the Court grant Plaintiff her reasonable attorneys' fees and costs of suit

7    pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the

8    common fund doctrine, or any other appropriate legal theory; and

9         K.       That the Court grant such other and further relief as may be just and proper.

10                                      **JURY DEMAND**

11             Plaintiff demands a trial by jury on all causes of action so triable.

12

13    Dated:    May 18, 2020                    Respectfully submitted,

14                                              LEXINGTON LAW GROUP

15

16

17                                              _/s/ Mark Todzo_
                                                Mark N. Todzo, (State Bar No. 168389)
                                                Meredyth Merrow, (State Bar No. 328337)
18                                              LEXINGTON LAW GROUP
                                                503 Divisadero Street
19                                              San Francisco, CA 94117
                                                Telephone: (415) 913-7800
20                                              Facsimile: (415) 759-4112
                                                mtodzo@lexlawgroup.com
21                                              mmerrow@lexlawgroup.com

22                                              Attorneys for Plaintiff
                                                JOSEPH DIGIACINTO
23

24

25

26

27

28